57 CCPA

**Application of John R. HAKALA.**

**Patent Appeal No. 8247.**

United States Court of Customs and Patent Appeals.

May 28, 1970.

Richards, Harris & Hubbard, D. Carl Richards, Dallas, Tex., attorneys of record, for appellant.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Lutrelle F. Parker, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges, and McMANUS, Chief Judge, Northern District of Iowa, sitting by designation.

BALDWIN, Judge.

This appeal was taken from that part of the decision of the Patent Office Board of Appeals which affirmed the rejection of claims 6–9 of appellant's application [1] as being obvious over the prior art under 35 U.S.C. § 103. At oral hearing, appellant withdrew the appeal as to claims 6 and 7, thus leaving only two claims for our consideration. The Board of Appeals reversed the rejection of five other claims.

### THE INVENTION

Appellant's specification discloses a combination device (for historical reasons, called a "gun") designed to be inserted into the bore of an oil well drill

---

1. Serial No. 461,941, filed June 7, 1965, entitled "Perforating means for Sand Control."

hole for the purpose of exploding "bullets" into the casing surrounding the bore, thereby penetrating and fracturing the earth formations around the bore hole. A better understanding of the invention will be provided by resort to the application drawings:

FIG. 3

FIG. 2

FIG. 1

[A1737]

FIG. 4

Figure 1 shows the perforator, or detonator gun [*10*], which appellant describes as being "of the jet perforating type." Spaced axially along the elongated gun barrel [*15*], are a number of "ports" (e. g., *28* and *29* in fig. 1) which are positioned in sets, the ports of each set lying in substantially the same plane. Each port contains a separate shaped explosive charge unit containing a metal liner which explodes into fragments (the "bullets") when the charge is detonated. As further described by appellant:

[I]n accordance with the invention, the shaped charge units have casings with tapered ends. In each casing the base of a conical explosive charge faces a port closure member whose diameter is larger than the diameter of the casing whereby the unit may be inserted into the gun barrel through the explosion port. An elongated fuse extends through the gun barrel and is centered between and in contact with the ends of each of the units in each set.

Figure 2 of the drawing illustrates a set of four shaped charge units (*31, 32, 33, 34*). A rejection of claims specifically describing the entire gun combination was reversed by the Board of Appeals.

The claims on appeal are drawn to the shaped charge units shown in figures 2–4. Note that figure 2 is a cross-section through figure 1, and figure 3 is a cross-section elevation view of figure 2.

Figure 4 shows a set of three shaped charge units, which, appellant says is an alternative embodiment. The elements of the shaped charge unit are recited in independent claim 6 [2] which recites [with reference to figure 2]:

6. A shaped charge for a perforating gun having a plurality of threaded explosion ports in the wall thereof, which charge comprises:

(a) a closure member [*33a*] adapted to be secured in one of said ports to form a fluid-tight seal,

(b) a hollow tubular casing [*33d*] adapted to be secured at an open end thereof to said closure member and of diameter smaller than the diameter of said ports with a closed truncated conical end [*33e*] opposite said open end,

(c) a quantity of explosive [*33f*] in said conical end, and

(d) a conical metal liner [*33g*] engaging said explosive with the apex extending into said truncated conical end.

Claim 8 recites:

8. The combination set forth in Claim 6 in which said closure member is provided with a hollow tubular extension frictionally to engage the open end of said casing.

Claim 9 further provides that the casing *33d* "is of plastic frictionally to encompass and engage said tubular extension to form a unitary charge unit."

2. Claims 8 and 9, the only remaining claims on appeal, are dependent on claim 6.

PRIOR ART

Caldwell [3] discloses a perforating gun wherein the shaped charge assembly contains two different units. The reference drawing is here reproduced for comparison:

FIG. 2.

FIG. 3.

FIG. 4.

FIG. 5.

FIG. 6.

FIG.

[A1738]

3. U.S. Patent 2,873,676, issued February 17, 1959.

Caldwell's so-called primary unit *20* (shown in figures 3 and 4) comprises an elongated tubular structure having a central aperture *28* through which the detonator fuse must be threaded and a double shaped charge, one on either end of the unit. At right angles to the axis of this central aperture and centrally located on opposite sides of the unit, are two recesses *40* and *41*. In practice, the primary units are inserted into the gun through one port hole and thereafter positioned between two opposite ports. The fuse is then threaded down through the center apertures and, finally, secondary charge units *42* are inserted into position within the recesses of the primary unit through the port holes at right angles to the primary units. After the four charges are properly positioned, the port closures *13* are threaded into place. It is to be noted from figure 6 of the drawing that the secondary units *42* are comprised of hollow cylindrical casings terminating at one end in a frusto-conical shape. As is evident from figures 2 and 4, the internal structure of the primary unit *20* is essentially the same as two secondary units with their cone points facing each other. Each unit is filled with a charge of explosive (30 in the primary units, *46* in the secondary units) and each contains a metallic liner ("bullet") mounted as a sheath over the charge (designated as *31* and *47*, respectively).

Udry [4] discloses a well perforator having a single shaped charge unit rather than an assembly of three or more. The reference was cited merely for its disclosure that the charge casing may be made of plastic material.

## THE REJECTION

Claim 8 on appeal was rejected as unpatentable over Caldwell under 35 U.S.C. § 103. Claim 9 was rejected over Caldwell in view of Udry. The examiner's reasoning was as follows:

* * * it is believed obvious to one skilled in the art to make the double charge unit 20 into two single units as this alteration would appear merely to be a matter of choice and design. Furthermore, the charge units of Caldwell are supported in the gun ports and abut their respective closure members. To have the closure members give additional support to the units would also be a matter of choice and design.

In affirming these rejections, the board stated:

Working from the Caldwell teachings, it appears to us that persons of ordinary skill in the art would find it obvious to connect the charge 42 to the associated closure member 13. Whether this connection be accomplished by adhesion or by frictional telescoping relationship appears to be no more than an obvious employment of known and obvious assembly expedients to expedite the employment of the Caldwell parts for the purposes taught in the reference. * * *

## OPINION

Appellant argues that the rejections were based on hindsight reasoning. He points out that Caldwell's structure *requires* that his shaped charge units be *separate* from the explosion port caps and asserts that, if the cap were made integral with the charge unit, the patentee's device would be inoperable. Conversely, it is argued, the claimed structure

is an integral unit which requires only one loading step and eliminates any possibility of an improper loaded relationship between the shaped charge unit and the closure cap, Appellant's integral shaped charge unit is only required to be served directly into the port with one loading operation, thereby effecting saving of time while eliminating any possibility of improper positioning or support of the shaped charge.

We will agree with appellant that Caldwell's double primary units and single secondary units were specifically

4. U.S. Patent 2,782,715, issued February 26, 1957.

designed to be inserted first and then positioned before the caps are to be placed on the explosion port holes and that the resulting relationship is one of direct abutment rather than interconnection. We will also assume arguendo, although there is some dispute, that the appealed claims define an interconnected structure which differs from Caldwell's secondary units as they are shown in spaced relationship with the port closures in place in Figure 2 of the patent, *supra*.

The issue thus becomes whether one skilled in this art, aware of the Caldwell disclosure, would consider it obvious to connect the port closure caps to the charge units of Caldwell and make them into a single structure. Here we must disagree with appellant and hold that the record fairly supports the conclusion that it would be obvious.

While the positions of both the examiner and board are long on assertions and rather short on reasoning, we feel it is fair to consider that the remarks of the board were limited to its discussion of the secondary unit and not to the language of the examiner referring to the double charge primary unit. It becomes clear then, that the board's position was based on the presumption that there is nothing in the reference which requires that the *secondary* units be separated from the caps and it therefore would be obvious and, apparently, even desirable to connect the cap to the secondary charge unit. The employment of a frictional telescoping relationship would be only one of several obvious assembly expedients to accomplish the connection. Appellant has argued that having the secondary charge unit connected to the cap would prevent relative reorganization of the units to properly orient the secondary charge unit relative to the primary unit since the secondary unit would then be firmly threaded within the port. Based upon our own reading of the reference disclosure, we are not convinced that such assertion is correct and the reasoning of the board, as we have interpreted it, must prevail.

The examiner's reasoning, too, although it was somewhat incomplete, calls for the same conclusion. It appears that this position was based on a consideration of the entire structure disclosed by Caldwell, including the double primary charge units *and* the patentee's stated purpose for so designing his structure. Containing the missing premise, which we consider to have been obviously implied from the context of the examiner's remarks (although we do not wish to condone such omission), this position may be stated as follows: "One of ordinary skill in the art, aware of Caldwell's disclosure but, unlike the patentee, who was concerned with simultaneous firing of the charges in precisely the same plane, being more concerned with simple and efficient loading and replacement of the shaped charge units into the explosion ports, would consider it obvious to split the double unit of Caldwell and connect the port closure caps directly to all the charge units." Our analysis of the record before us is that there is a substantial basis for reaching this conclusion as well. Accordingly, the decision of the Board of Appeals affirming the rejection of claims 8 and 9 is affirmed.

Affirmed.